# Exhibit A

Raymond P. Boucher, State Bar No. 115364
 *ray@boucher.la*
Alexander Gamez, State Bar No. 309708
 *gamez@boucher.la*
Michael Gorelik, State Bar No. 337068
 *gorelik@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:    (818) 340-5400
Fax:    (818) 340-5401

*Attorneys for Plaintiff Thaylia Donna Quinn*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**11/09/2023** at 02:24:50 PM
Clerk of the Superior Court
By Vanessa Sezenol, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO, CENTRAL DIVISION**

| | |
|---|---|
| THAYLIA DONNA QUINN, Individually,<br><br>Plaintiff,<br><br>v.<br><br>PROCTOR & GAMBLE CO.; WAL-MART STORES, INC.; TARGET CORPORATION; and DOES 1-100, Inclusive,<br><br>Defendants. | Case No.:    37-2023-00049034-CU-PO-CTL<br><br>**COMPLAINT FOR**:<br><br>1. **Negligence**<br>2. **Strict Liability–Failure To Warn**<br>3. **Strict Liability–Design Defect**<br>4. **Strict Liability–Manufacturing Defect**<br>5. **Breach of Implied Warranty of Merchantability**<br>6. **Fraudulent Concealment**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Dermal absorption occurs when a chemical penetrates through the skin and into the body. Many chemicals damage organs and cause cancer if they penetrate the skin and enter the bloodstream or lymphatic system. Benzene is one such chemical.

2.      The rate of dermal absorption depends on the outermost layer of the skin called the stratum corneum. The stratum corneum is the body's first line of defense. It provides a barrier that protects against unwanted chemicals passing through the skin, into the bloodstream or lymphatic system and, ultimately, the internal organs.

3.      This outermost layer of the skin is thinner and less protective in the underarms and scalp than many other body parts.  In turn, the rate of dermal absorption in these areas is significantly faster. These areas become even less protective when they are shaved and layers of the stratum corneum are removed.

4.      Despite these facts, widely accepted in the scientific community, the Proctor & Gamble Company ("P&G") designed, manufactured, and sold personal care products for use on the underarms and scalp that contained significant and unsafe levels of benzene—a known human carcinogen.  P&G knew or should have known that the products contained significant and unsafe levels of benzene, yet they promoted frequent application to the areas of the body least protective of this cancer-causing chemical.

5.      Their dereliction of duty is compounded by their concealment of the dangerousness of their products. Indeed, P&G have flouted the California Safe Cosmetics Act of 2005, which requires them to report the presence of known human carcinogens, like benzene, in the personal care products they sell in the state of California.

6.      Plaintiff Thaylia Donna Quinn ("Plaintiff") used P&G's personal care products for decades. She now suffers from leukemia and bone marrow cancer due to her prolonged exposure to the benzene pervasive in P&G's personal care products. She seeks to hold P&G accountable for her injuries and to require P&G to follow the practices of its competitors, whom are able to produce personal care products without significant levels of benzene.

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

## **NATURE OF THE ACTION**

7.      Defendants, as defined below, manufacture, distribute, and sell personal care products, including Herbal Essences dry shampoo and conditioner (the "Personal Injury Product(s)"). Several of the Personal Injury Products were independently tested and shown to contain dangerous levels of benzene, a known human carcinogen; the others have been recalled for the same reason.

8.      P&G knew or should have known about the presence of benzene in their Personal Injury Products. P&G nevertheless failed to protect its customers from benzene exposure.  The company failed to warn Plaintiff about the fact or consequence of benzene exposure inherent in the use of the Personal Injury Products by actively concealing the presence of benzene in the Personal Injury Products from the California Department of Public Health ("CDPH").  P&G spent tens of thousands lobbying against the California Safe Cosmetics Act of 2005 (the "Act"),[1] which requires cosmetics manufacturers to disclose the presence of significant levels of cancer-causing chemicals in cosmetics sold in California. When their efforts failed and the Act passed, P&G concealed the presence of benzene in the Personal Injury Products by failing to fulfill its mandatory reporting duty under the Act.[2]

9.      P&G's failure to disclose and/or warn Plaintiff that the Personal Injury Products contain significant levels of the cancer-causing chemical benzene, was negligent.

10.     P&G sold the Personal Injury Products despite its actual or constructive knowledge of a material design and/or manufacturing defect. Further, based on defects in the design and testing of the Personal Injury Products, P&G knew or should have known that Plaintiff would suffer injuries caused by the inclusion of benzene in the Personal Injury Products. P&G concealed these facts. Their failure to disclose this defect constitutes an actionable misrepresentation.

11.     Plaintiff has been damaged by P&G's concealment and non-disclosure of the

---

[1] https://safecosmetics.org/wp-content/uploads/2015/02/GOVERNOR-SIGNS-SAFE-COSMETICS-BILL.pdf

[2] https://cscpsearch.cdph.ca.gov/

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

defective nature of the Personal Injury Products, because she was misled into purchasing products of a quality and value different than she was promised. Had P&G informed Plaintiff about the problems caused by the Personal Injury Products at the time of purchase, she would not have bought them.

12.     As a result of P&G's practices, Plaintiff has suffered injury in fact, including economic damages. Plaintiff seeks injunctive relief and restitution for the full purchase price of the Personal Injury Products she purchased.

13.     Plaintiff brings personal injury claims against Defendants, as defined below, for the manufacture and sale of defectively designed and/or manufactured personal care products containing significant and unsafe levels of benzene, a known human carcinogen. The inclusion of significant and unsafe levels of benzene in the Personal Injury Products is a design and/or manufacturing defect. As a result of the defective nature of the Personal Injury Products they were unfit for their intended use and purpose. Plaintiff was regularly exposed to significant and unsafe benzene levels and consequently contracted bone marrow cancer and leukemia, respectively. Plaintiff seeks noneconomic pain, suffering, and inconvenience damages, as well as economic damages for past and future medical expenses.

14.     Plaintiff alleges the following based on personal knowledge and the investigation of her counsel, and, as to all other matters, upon information and belief.  Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

15.     This is an unlimited civil case as defined in Code of Civil Procedure section 88. The causes of action alleged arise under California law.

16.     This Complaint is brought pursuant to California Code of Civil Procedure section 382.

17.     The actions and/or omissions that give rise to this legal action occurred in San Diego County, California.

18.     This Court has jurisdiction over this action pursuant to Code of Civil Procedure

section 410.10. This Court has personal jurisdiction over Defendants, because these entities conduct business within San Diego County, California, and because said business contacts were instrumental in and gave rise to the allegations in this complaint.

19.     Venue is proper in this judicial district pursuant to California Code of Civil Procedure section 395(b) in that this action arises from an offer or provision of goods primarily for personal use and Plaintiff purchased the goods at issue in San Diego County. The injuries that have been sustained by Plaintiff as a result of Defendants' illegal conduct occurred in the San Diego County.  Moreover, at all relevant time, Defendants promoted, marketed and sold their products, including the Personal Injury Products at issue, to purchasers in California, including San Diego County.

## **THE PARTIES**

20.     Plaintiff Thaylia Donna Quinn resides in Murrieta, California, and at all times relevant hereto has been a resident of Riverside County. Plaintiff habitually purchased Herbal Essence-branded Personal Injury Products from Walmart and Target in San Diego County throughout the past decade.  When Plaintiff purchased the Herbal Essences-branded Personal Injury Products, she had the reasonable belief that the Herbal Essences-branded Personal Injury Products were safe and free of carcinogens. Plaintiff would not have purchased the products had she known the products contained benzene, a known human carcinogen.  As a result, Plaintiff suffered injury when she purchased a product she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.  In addition, Plaintiff was diagnosed with Chronic Lymphocytic Leukemia on November 12, 2021.  Chronic Lymphocytic Leukemia is a type of cancer of the blood and bone marrow that is a known side effect of benzene exposure.  Plaintiff suffered injury in fact when benzene exposure caused her to contract Chronic Lymphocytic Leukemia.

21.     Defendant P&G is an Ohio corporation with its principal place of business located in Cincinnati, Ohio. P&G distributes its products, including the Personal Injury Products purchased by Plaintiff, throughout the United States.  P&G's products, including the Personal Injury Products purchased by Plaintiff, are available at retail stores throughout California and the

1  United States.

2      22.      Defendant Wal-Mart Stores, Inc. ("Walmart") is a Delaware corporation with its

3  principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart engaged

4  in the distribution and retail sales of the Personal Injury Products, which are sold in retail locations

5  and over the Internet to California consumers. Walmart was an integral part of the overall

6  marketing enterprise involving the Personal Injury Products.

7      23.      Defendant Target Corporation ("Target"; collectively, with Walmart and P&G, the

8  "Defendants") is a Minnesota Corporation with its principal place of business at 1000 Nicollet

9  Mall, Minneapolis, Minnesota 55403. Target engaged in the distribution and retail sales of the

10  Personal Injury Products, which are sold in retail locations and over the internet to California

11  consumers. Target was an integral part of the overall marketing enterprise involving the Personal

12  Injury Products.

13      24.      Under California law, retail sellers of the Personal Injury Products, are liable in

14  strict liability to purchasers, including Plaintiff, for injuries caused by design and manufacturing

15  defects associated with the products.

16                                    **BACKGROUND**

17                                    ***Benzene Exposure***

18      25.      Benzene is a chemical that is a colorless or light-yellow liquid at room temperature.

19  It has a sweet odor and is highly flammable. It can occur from natural processes such as forest

20  fires or volcanoes, or from artificial human manufacturing activities.[3]

21      26.      Exposure to benzene is detrimental to human health.

22      27.      The harmful effects of benzene exposure on human health are well-documented

23  and well-accepted. In the immediate term, exposure to benzene causes drowsiness, dizziness, rapid

24  or irregular heartbeat, headaches, tremors, confusion, unconsciousness, vomiting, irritation of the

25

26

27  _____
[3] https://www.cancer.org/cancer/cancer-causes/benzene.html

28

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

1  stomach, sleepiness, convulsions, and, at significant levels, even death.[4]  In the long term, studies

2  have shown that rates of leukemia and other cancers are higher in humans exposed to high levels

3  of benzene.[5] Prolonged exposure to benzene also causes harmful effects on the bone marrow and

4  can cause a decrease in red blood cells, leading to anemia.[6] It can also cause excessive bleeding, a

5  weakened immune system, and an increased chance for infection.[7] Some women exposed to

6  benzene had irregular menstrual periods and a decrease in the size of their ovaries.[8]  Studies have

7  shown low birth weights, delayed bone formation, and bone marrow damage when pregnant

8  animals are exposed to benzene.

9      28.    The United States Department of Health and Human Services has determined that

10  benzene causes cancer in humans.[9] Similarly, the World Health Organization and the International

11  Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound that is

12  carcinogenic to humans. The IARC has linked benzene exposure with many types of leukemia,

13  including chronic lymphocytic leukemia.[10]

14      29.    Benzene's carcinogenic effects are why the FDA classifies benzene as a "Class 1

15  solvent," meaning that benzene "should not be employed in the manufacture of drug substances,

16  excipients, and drug products because of their unacceptable toxicity ... However, if their use is

17  unavoidable in order to produce a drug product with a significant therapeutic advance, then their

18  levels should be restricted" to two parts per million ("ppm").

19      30.    The National Institute for Occupational Safety and Health ("NIOSH") recommends

20

21  [4] *Id.*

22  [5] *Id.*

23  [6] https://emergency.cdc.gov/agent/benzene/basics/facts.asp

24  [7] *Id.*

25  [8] *Id.*

26  [9] https://emergency.cdc.gov/agent/benzene/basics/facts.asp

27  [10] https://www.cancer.org/cancer/cancer-causes/benzene.html

28

7

1  protective equipment be worn by workers exposed to benzene at concentrations of 0.1 ppm.

2      31.    The detrimental effects of benzene exposure have been known for decades. In

3  1948, the American Petroleum Institute stated: "it is generally considered that the only absolutely

4  safe concentration for benzene is *zero*."[11]  A study from 1939 on benzene stated that "exposure

5  over a long period of time to any concentration of benzene greater than zero is not safe."[12] This

6  comment was reiterated in a 2010 review of benzene research: "There is probably no safe level of

7  exposure to benzene, and all exposures constitute some risk[.]"[13]

8      32.    Exposure to benzene occurs through inhalation, absorption, ingestion, and skin or

9  eye contact.[14]

10     33.    The rate of benzene absorption is faster in the underarms and scalp than other parts

11 of the body, due to the relatively thinner stratum corneum in these areas.[15]

12                              ***The Personal Injury Products***

13     34.    P&G is a global leader in the manufacturing, distributing, and sale of personal care

14 products, including deodorants, shampoos, and conditioners.

15     35.    Due to their size and sterling reputation, the P&G brand instantly lends credibility

16 to their product line. Consumers trust that the P&G brand manufactures, distributes, and sells safe

17 personal care products.

18

---

19 [11] American Petroleum Institute, API Toxicology Review, Benzene 1948

20 [12] Hunter, F.T. (1939). Chronic Exposure to Benzene (Benzol). II. The Clinical Effects. Journal of
21 Industrial Hygiene and Toxicology. 1939 Vol.21 pp.331-54
   (https://www.cabdirect.org/cabdirect/abstract/19402700388) 23 Smith, Martyn T. (2010).
22 Advances in Understanding Benzene Health Effects and Susceptibility. Annual Review of Public
   Health. 2010 Vol. 31:133-148
23 (https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646)

24 [13] Smith, Martyn T. (2010). Advances in Understanding Benzene Health Effects and
   Susceptibility. Annual Review of Public Health. 2010 Vol. 31:133-148
25 (https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646)

26 [14] *Id*.

27 [15] Baynes, RE and Hodgson E. Absorption and Distribution of Toxicants. in Chapter 6 of A
28 Textbook of modern toxicology. 3rd edition. 2004, John Wiley & Sons, Inc.

36.     P&G has launched numerous aerosol spray personal care products over the past several decades, including the Personal Injury Products complained of here.

37.     The Personal Injury Products are intended to be applied to the underarms and scalp.

38.     The Herbal Essences Brand was created in 1971 and acquired by P&G in 2001. After its acquisition, P&G expanded the Herbal Essences Brand into aerosol spray shampoos and conditioners.

39.     The presence of benzene in Herbal Essences-branded Personal Injury Products manufactured, distributed, and sold by P&G has *never* been disclosed to CDPH's Division of Environmental and Occupational Disease Control.

40.     P&G *never* warned Plaintiff that Herbal Essences-branded Personal Injury Products contain benzene, despite its actual or constructive knowledge thereof.

41.     On December 17, 2021, P&G issued a recall of certain dry conditioner and shampoo products "from Herbal Essences due to the presence of benzene."

42.     The recall provided a Risk Statement: "Benzene is classified as a human carcinogen. Exposure to benzene can occur by inhalation, orally, and through the skin and it can result in cancers including leukemia and blood cancer of the bone marrow and blood disorders which can be life-threatening."

### *Regulation of the Personal Injury Products*

43.     The California Safe Cosmetics Act of 2005 was enacted in response to a gap in federal oversight of cosmetics, which "are not  required to be  approved before they are sold to the public and the FDA does not have the authority to require  manufacturers to file health and safety data on cosmetic ingredients or to order a recall of a dangerous cosmetic product."

44.     California law defines a "[c]osmetic" as "any article, or its components, intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance." Cal. Health & Safety Code § 109900.

45.     As described above, the Personal Injury Products at issue are shampoos and conditioners that contain significant and unsafe levels of benzene.

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

46.     The Personal Injury Products are cosmetics regulated under the Act.

47.     The purpose behind the Act is to collect information regarding hazardous ingredients in cosmetic products sold in California *and makes this information available to the public*. The Act requires the manufacturer of any cosmetic that is sold in California to disclose the following information for all cosmetic products sold in the state that contain any "chemical identified as causing cancer or reproductive toxicity": (1) the label name; (2) company/manufacturer; (3) product brand; (4) product categories; (5) Chemical Abstracts Service registry numbers (CAS#) of the reported chemical ingredients; (6) names of reported chemical ingredients; (7) the number of reported chemicals for each product; and (8) the dates of reporting, product discontinuation or reformulation, if applicable.

48.     The CDPH maintains an online reporting system for companies to comply with their mandatory reporting duties under the Act. The data is publicly available in a searchable database.[16]

49.     Benzene is a "chemical identified as causing cancer or reproductive toxicity" under the Act by virtue of the International Agency for Research on Cancer ("IARC") having classified benzene as a Group 1 compound that is carcinogenic to humans. *See* Cal. Health & Safety Code § 111791.5(b)(2) (A "[c]hemical identified as causing cancer or reproductive toxicity," includes, among others, [a] substance given an overall carcinogenicity evaluation of Group 1, Group 2A, or Group 2B by the [IARC].").

50.     P&G's competitors have reported the presence of benzene in their products to the Division of Environmental and Occupational Disease Control.

51.     P&G knew or should have known of the presence of significant and unsafe levels of benzene in the Personal Injury Products, yet has *never* reported the significant and unsafe levels of benzene in any of their cosmetic products, despite the chemical's pervasiveness in their products, including the Personal Injury Products.

52.     In 2016, the California Safe Cosmetics Program, established by the Act, issued a

---

[16] https://cscpsearch.cdph.ca.gov/search/publicsearch

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

report titled *Cosmetics Containing Ingredients Linked to Cancer or Reproductive Harm: Data Reported to the California Safe Cosmetics Program, 2009-2015*. It noted that "[n]ot all companies are complying with reporting requirements. The database may not contain all cosmetic products that should be reported under the Safe Cosmetics Act." Chief among the unreported products are the Personal Injury Products, which, per the Valisure Tests, contain some of the highest concentrations of benzene in the cosmetics industry.

53.    P&G lobbied against the Act because its products, including the Personal Injury Products, contain benzene and other carcinogens.

54.    Having failed in its efforts to defeat the Act, P&G opted instead to conceal the carcinogenic properties of the Personal Injury Products by abdicating its duty to report under the Act.

### Proposition 65

55.    Furthermore, Defendants violated Proposition 65 by failing to warn Plaintiff that she was being exposed to benzene, a chemical known to cause cancer, birth defects and other reproductive harm.

56.    Under California's Proposition 65, Health & Safety Code § 25249.5, *et seq*., it is unlawful for businesses to knowingly and intentionally expose individuals in California to chemicals known to the State to cause cancer and/or birth defects or other reproductive harm without providing clear and reasonable warnings to individuals prior to their exposure.

57.    Despite the fact that Defendants exposed individuals who used the Personal Injury Products, including Plaintiff, to benzene, a chemical known to the State of California to cause cancer, birth defects and other reproductive harm, they provided no warnings to such individuals whatsoever. In fact, rather than providing the clear and reasonable warnings required under Proposition 65, P&G stated the exact opposite — that the Personal Injury Products did not require a Proposition 65 warning and that the benzene exposures resulting from their conduct were all within safe levels, when they published Risk Statements contradicting the Valisure Tests, stating that "[b]ased on exposure modeling and the cancer risk assessments published by the Environmental Protection Agency (EPA) (IRIS database), daily exposure to benzene in the

1 recalled products at the levels detected in our testing would not be expected to cause adverse

2 health consequences."

3      58.      P&G was well aware that they were exposing individuals to benzene at levels

4 requiring a warning under Proposition 65, as evidenced by the recalls detailed above.

5                              **PERSONAL INJURY ALLEGATIONS**

6      59.      At all relevant times, the Defendants were and are engaged in the business of

7 developing, designing, manufacturing, marketing, selling, testing, and distributing into the stream

8 of commerce in California the Personal Injury Products used by Plaintiff in the decades leading up

9 to, and at the time of her diagnosis of leukemia (the "Personal Injuries"). The Personal Injury

10 Products were unfit and unsafe for their intended use and purpose because of design,

11 manufacturing, warning, and/or inspection defects that caused the Personal Injuries.

12     60.      Defendants have known or should have known, based on pre-release formulation

13 and testing and on-going testing, that the Personal Injury Products, would contain benzene

14 sufficient to cause cancer and serious injuries, including the Personal Injuries, and that such

15 injuries could occur when Personal Injury Products were used as intended or in a reasonably

16 foreseeable manner.

17     61.      P&G knowingly falsified their test results, ignored and suppressed data, abdicated

18 their responsibility to test, and/or further falsely mischaracterized adverse test data which

19 Defendants knew at the time tended to prove that the Personal Injury Products were defective and

20 unsafe for their intended use, and exposed consumers of the Personal Injury Products to the

21 injuries and other serious illnesses.

22     62.      Despite their awareness of defects in the Personal Injury Products; of the

23 significant benzene presence and manufacturing and design defects in the Personal Injury

24 Products; and in spite of the longstanding recommendations of the scientific community extolling

25 the dangerousness of benzene exposure, Defendants chose to ignore the serious risk of cancer and

26 other serious personal injuries and took no action to prevent injuries and deaths, including

27 Plaintiff's injuries, because of concern about cost penalties. Defendants' failure to act is enhanced

28 by the similar, yet lesser, acts of their competitors, who, as detailed above, are able to produce

1    similar products without significant levels of benzene.

2        63.    At all times herein mentioned, on information and belief, Defendants each of them,

3    knew and were aware that members of the public were suffering from cancer, death, and serious

4    injuries as a result of the failure to use ingredients and processes other than those resulting in

5    significant and unsafe levels of benzene in the Personal Injury Products. These Defendants, and

6    each of them, were further aware that such Personal Injuries could foreseeably result from

7    prolonged benzene exposure, as with the Personal Injuries.

8        64.    Upon further information and belief, Defendants, were aware well in advance of

9    placing the Personal Injury Products into the stream of commerce that they were prone to

10   unreasonably high rates of benzene presence due to pre-release formulation and on-going testing.

11       65.    Defendants and each of them, in order to advance their pecuniary gains, knowingly

12   failed to take any action to correct the defects in the Personal Injury Products, including failing to

13   warn or otherwise educate the public, including Plaintiff, about the serious risks associated with

14   the Personal Injury Products.

15                    **FIRST CAUSE OF ACTION**
                          **NEGLIGENCE**
16                 **(By Plaintiff Against All Defendants)**

17       66.    Plaintiff incorporates the aforementioned allegations as though alleged herein.

18       67.    Defendants knew or should have known of the presence of significant and unsafe

19   levels of benzene in the Personal Injury Products.

20       68.    Defendants had a duty to exercise reasonable care when designing, formulating,

21   manufacturing, supplying, inspecting, testing, producing, and distributing the Personal Injury

22   Products.

23       69.    Defendants had a duty to disclose the presence of benzene in the Personal Injury

24   Products.

25       70.    Defendants had a duty to ensure that the Personal Injury Products did not pose an

26   unreasonable risk of harm to Plaintiff.

27       71.    Defendants, and their agents, officers and/or employees, failed to exercise ordinary

28   care and failed to comply with existing standards of care, including, but not limited to (i)

negligently and recklessly designing, formulating, manufacturing, supplying, inspecting, testing, producing, and distributing the Personal Injury Products, and (ii) concealing the significant and unsafe levels of benzene in any of their cosmetic products, including the Personal Injury Products, when disclosure to the public was necessary.

72.    Plaintiff's habitual use of Personal Injury Products was a substantial factor in causing her injuries.

73.    As a direct and proximate result of Defendants' negligence, Plaintiff used the Personal Injury Products, causing her to suffer serious injuries due to her prolonged exposure to benzene. Specifically, Defendants' negligence was a direct and proximate cause of Plaintiff's diagnosis with Chronic Lymphocytic Leukemia on November 12, 2021.  Chronic Lymphocytic Leukemia is a type of cancer of the blood and bone marrow that is a known side effect of benzene exposure.  Plaintiff suffered injuries when benzene exposure caused her to contract Chronic Lymphocytic Leukemia.

### SECOND CAUSE OF ACTION
### STRICT LIABILITY – FAILURE TO WARN
### (By Plaintiff Against All Defendants)

74.    Plaintiff incorporates the aforementioned allegations as though alleged herein.

75.    At all times referenced herein, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Personal Injury Products to Plaintiff.

76.    At all times material hereto, the use of the Personal Injury Products in a manner that was intended and/or reasonably foreseeable by Defendants involved substantial risk of the injuries described above.

77.    At all times the risk of the injuries described above were known or knowable by Defendants, in light of the generally recognized and prevailing knowledge available at the time of manufacture, marketing, labeling, sale, distribution and design, as described herein.

78.    Defendants, as the manufacturers, distributors, and/or sellers of the Personal Injury Products, had a duty to warn Plaintiff of all dangers associated with the intended use of the products.

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

79.     Defendants were negligent and breached their duties of care by negligently failing to give adequate warnings to purchasers and users of the Personal Injury Products, including Plaintiff, about the risks, potential dangers and defective condition of the Personal Injury Products.

80.     Defendants knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Personal Injury Products as described herein, and knew that Plaintiff could not reasonably be aware of those risks. Defendants failed to exercise reasonable care in providing Plaintiff with adequate warnings.

81.     Plaintiff's habitual use of Personal Injury Products was a substantial factor in causing her injuries.

82.     As a direct and proximate result of Defendants' negligence, Plaintiff used the Personal Injury Products, causing her to suffer serious injuries due to her prolonged exposure to benzene. Specifically, Defendants' negligence was a direct and proximate cause of Plaintiff's diagnosis with Chronic Lymphocytic Leukemia on November 12, 2021.  Chronic Lymphocytic Leukemia is a type of cancer of the blood and bone marrow that is a known side effect of benzene exposure.  Plaintiff suffered injuries when benzene exposure caused her to contract Chronic Lymphocytic Leukemia.

## THIRD CAUSE OF ACTION
## STRICT LIABILITY – DESIGN DEFECT
### (By Plaintiff Against All Defendants)

83.     Plaintiff incorporates the aforementioned allegations as though alleged herein.

84.     Defendants manufactured, designed, distributed, and sold the Personal Injury Products.

85.     At the time of their manufacture, design, distribution, and sale, the Personal Injury Products possessed a design defect. The Personal Injury Products were defective because they failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

86.     The Personal Injury Products were also defective in design because a safer design was available and feasible at the time of the products' design and manufacture prior to Plaintiff's use of the products. The technology to implement such a design existed at the time of design and

15

1 manufacture of the Personal Injury Products and the cost of implementing the design would have

2 been minimal compared to the foreseeable risk of a consumer, such as Plaintiff, being exposed to

3 benzene.

4    87.    As a direct and proximate result of the Personal Injury Products' design defects and

5 retail sale, Plaintiff contracted leukemia. She has incurred significant medical treatment expenses

6 from the time that they were diagnosed until the present, said expenses being caused by

7 Defendants' design defects.

8    88.    Defendants' design defects and retail sale set forth in this complaint were a

9 substantial factor in causing Plaintiff's medical treatment and expenses from the time that she was

10 diagnosed until the present, because without the design defects in the Personal Injury Products

11 causing benzene exposure, ultimately resulting in Plaintiff' injuries, Plaintiff would not have

12 incurred the medical expenses related to her personal injuries.

13
## FOURTH CAUSE OF ACTION
### STRICT LIABILITY – MANUFACTURING DEFECT
14
### (By Plaintiff Against All Defendants)

15    89.    Plaintiff incorporates the aforementioned allegations as though alleged herein.

16    90.    Defendants manufactured, designed, distributed, and sold the Personal Injury

17 Products.

18    91.    The Personal Injury Products contained a manufacturing defect when they left

19 Defendant's possession because they differed from Defendants' intended end product result and/or

20 differed from other Personal Injury Products manufactured, designed, distributed, and sold by

21 Defendants.

22    92.    This defect existed when the Personal Injury Products left Defendants' possession.

23    93.    As a direct and proximate result of the Personal Injury Products' design defects and

24 retail sale, Plaintiff contracted leukemia. She has incurred significant medical treatment expenses

25 from the time that they were diagnosed until the present, said expenses being caused by

26 Defendants' design defects.

27    94.    Defendants' design defects and retail sale set forth in this complaint were a

28 substantial factor in causing Plaintiff's medical treatment and expenses from the time that she was

1  diagnosed until the present, because without the design defects in the Personal Injury Products

2  causing benzene exposure, ultimately resulting in Plaintiff' injuries, Plaintiff would not have

3  incurred the medical expenses related to her personal injuries.

### FIFTH CAUSE OF ACTION
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(By Plaintiff Against All Defendants)**

95.    Plaintiff incorporates the aforementioned allegations as though alleged herein.

96.    Plaintiff bought the Personal Injury Products from Defendants.

97.    At the time of the purchases, Defendants were in the business of selling the Personal Injury Products.

98.    The Personal Injury Products were not of the same quality as those generally acceptable in the trade, were not fit for the ordinary purposes for which they were used, and id not measure up to Defendants' promises.

99.    Defendants' breaches of the implied warranty were a substantial factor in causing Plaintiff's harm.

100.    As a direct and proximate result of Defendants' negligence, Plaintiff used the Personal Injury Products, causing her to suffer serious injuries due to her prolonged exposure to benzene. Specifically, Defendants' negligence was a direct and proximate cause of Plaintiff's diagnosis with Chronic Lymphocytic Leukemia on November 12, 2021.  Chronic Lymphocytic Leukemia is a type of cancer of the blood and bone marrow that is a known side effect of benzene exposure.  Plaintiff suffered injuries when benzene exposure caused her to contract Chronic Lymphocytic Leukemia.

### SIXTH CAUSE OF ACTION
**FRAUDULENT CONCEALMENT**
**(By Plaintiff Against All Defendants)**

101.    Plaintiff incorporates paragraphs 1 through 65 as though alleged herein.

102.    The Personal Injury Products (i) have not been proven safe, particularly as they are intended and directed to be used, and (ii) contain significant, unsafe levels of benzene, a known carcinogen.

103.    Defendants had a duty to disclose the presence of benzene in their products because (i) the chemicals created an unreasonable safety risk and/or (ii) the state rules and regulations described above created such a duty.

104.    Defendants failure to disclose the presence of benzene was intentional and reflects a reckless disregard for the truth. Defendants knew that the products contained benzene, but intentionally failed to disclose that material fact to consumers.

105.    Plaintiff was induced to act by Defendants' fraudulent concealment of material facts regarding the presence of benzene in the products. Had Plaintiff been informed of the presence of benzene in the products in question, she would not have purchased such products.

106.    Plaintiff had a reasonable expectation that the Personal Injury Products she was purchasing would not contain benzene. Likewise, Plaintiff can reasonably be presumed to have believed that the Personal Injury Products did not contain hazardous chemicals that Defendants were obligated to disclose, such as benzene. Defendants reasonably could have anticipated and intended that Plaintiff purchased such products in part based upon such expectations and assumptions, and intended her to do so.

107.    Defendants' suppression and omission of material facts associated with their failure to disclose the presence of hazardous chemicals in the Personal Injury Products occurred repeatedly in their trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

108.    In failing to disclose the presence of benzene in the Personal Injury Products, that Defendants knew were in such Personal Injury Products, they concealed material facts and breached their duty to Plaintiff.

109.    Plaintiff's habitual use of Personal Injury Products was a substantial factor in causing her injuries.

110.    As a direct and proximate result of Defendants' conduct, Plaintiff used the Personal Injury Products, causing her to suffer serious injuries due to her prolonged exposure to benzene. Specifically, Defendants' conduct was a direct and proximate cause of Plaintiff's diagnosis with Chronic Lymphocytic Leukemia on November 12, 2021.  Chronic Lymphocytic Leukemia is a

type of cancer of the blood and bone marrow that is a known side effect of benzene exposure. Plaintiff suffered injuries when benzene exposure caused her to contract Chronic Lymphocytic Leukemia.

### <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Thaylia Donna Quinn prays for judgment against all Defendants as follows:

a. For noneconomic pain, suffering, and inconvenience damages past, present and future in an amount according to proof at trial, and beyond the jurisdictional minimum of this Court;

b. For economic damages for past and future medical expenses, in an amount according to proof at trial;

c. For interest upon any judgment entered as provided by law;

d. For costs of suit incurred herein; and

e. For such other and further relief as this Court may deem just and proper.

DATED:  November 9, 2023          BOUCHER LLP

By: _____
RAYMOND P. BOUCHER
ALEXANDER GAMEZ
MICHAEL GORELIK
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED

1  <u>**DEMAND FOR JURY TRIAL**</u>

2

3         Plaintiff demands a trial by jury on all claims, causes of action, and issues so triable.

4

   DATED:  November 9, 2023            BOUCHER LLP

5

6

7                                      By: _____

8                                          RAYMOND P. BOUCHER
                                           ALEXANDER GAMEZ
9                                          MICHAEL GORELIK
                                           Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND JURY TRIAL DEMANDED