UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAYLIA DONNA QUINN, individually,<br><br>Plaintiff,<br><br>v.<br><br>PROCTOR & GAMBLE CO.; WAL-MART STORES, INC.; TARGET CORPORATION; and DOES 1–100, inclusive,<br><br>Defendants. | Case No.: 24-CV-856 JLS (SBC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(ECF No. 23) |

Presently before the Court are Defendants Procter & Gamble Co.'s ("P&G"), Wal-Mart Inc.'s, and Target Corporation's (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("Mot.," ECF No. 23). Plaintiff Thaylia Donna Quinn filed an Opposition to Defendants' Motion to Dismiss ("Opp'n," ECF No. 26), to which Defendants filed a Reply in Support of the Motion ("Reply," ECF No. 27). Having carefully reviewed Plaintiff's First Amended Complaint ("FAC," ECF No. 21), the Parties' arguments, and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

/ / /

/ / /

# BACKGROUND

Plaintiff is a resident of Murrieta, California, who "habitually purchased Herbal Essence-branded [dry shampoo] from Walmart and Target in San Diego County throughout the past decade." FAC ¶ 20. Specifically, Plaintiff purchased the "Herbal Essences White Grapefruit & Mint Dry Shampoo and Herbal Essences Cucumber & Green Tea Dry Shampoo Personal Injury Products." *Id.* The Herbal Essences Brand has been in stores since 1971 and was acquired by P&G, "a global leader in the manufacturing, distributing, and sale of personal care products," in 2001. *Id.* ¶¶ 34, 38. After acquiring Herbal Essences, "P&G expanded the Herbal Essences Brand into aerosol spray shampoos and conditioners, including the Herbal Essences White Grapefruit & Mint Dry Shampoo and Herbal Essences Cucumber & Green Tea Dry Shampoo Personal Injury Products," the health care products ("Products") at the center of this dispute. *Id.* ¶ 38.

In reliance on P&G's "size and sterling reputation, [which] instantly lends credibility to [its] product line," *id.* ¶ 35, Plaintiff "used P&G's personal care products for decades," *id.* ¶ 6. Unbeknownst to Plaintiff, however, was the alleged presence of "significant and unsafe levels of benzene—a known human carcinogen"—in the Products manufactured by P&G. *Id.* ¶ 45. Particularly susceptible to benzene, says Plaintiff, are the underarms and scalp, of which the "outermost layer of the skin is thinner and less protective." *Id.* ¶ 3. This outermost layer, or the stratum corneum, is critical to wellbeing as it "provides a barrier that protects against unwanted chemicals passing through the skin, into the bloodstream or lymphatic system and, ultimately, the internal organs." *Id.* ¶ 2. One such unwanted chemical is benzene. *Id.* ¶ 1. Plaintiff blames the benzene allegedly found in the Products for the Chronic Lymphocytic Leukemia ("CLL") and bone marrow cancer of which she now suffers. *Id.* ¶ 6.

Generally speaking, several voices from the scientific community support the contention that exposure to benzene—"a colorless or light-yellow liquid at room temperature"—is "detrimental to human health." *Id.* ¶¶ 25–26. Plaintiff cites a plethora of governmental agencies and other entities that have reached this conclusion. For

example, the "World Health Organization and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound that is carcinogenic to humans." *Id.* ¶ 28. The United States Food and Drug Administration ("FDA") has similarly labeled benzene a "Class 1 solvent," which means that it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." *Id.* ¶ 29. The National Institute for Occupational Safety and Health, the American Petroleum Institute, and multiple academic studies also favor a risk-averse approach, with one 2010 study commenting that "[t]here is probably no safe level of exposure to benzene, and all exposures constitute some risk." *Id.* ¶¶ 30–31. That said, the jury is out as far as what level of benzene exposure is tolerable, as the FDA does permit the use of Class 1 solvents "if their use is unavoidable in order to produce a drug product with a significant therapeutic advance," in which case the solvents should be restricted to two parts per million ("ppm"). *Id.* ¶ 29.

The State of California has taken precautionary measures with respect to benzene and other like chemicals beyond those taken at the federal level, two of which Plaintiff highlights in her Amended Complaint. First, Plaintiff cites the California Safe Cosmetics Act of 2005 ("CSCA"). *See id.* ¶¶ 43–55. Under the CSCA, manufacturers of cosmetic products containing "a chemical identified as causing cancer or reproductive toxicity" must make certain public disclosures. Cal. Health & Safety Code § 111792(a). Because it has been "given an overall carcinogenicity evaluation of Group 1, Group 2A, or Group 2B by the [IARC]," benzene fits the mold. *Id.* § 111791.5(b)(2). Plaintiff alleges that P&G has violated the CSCA because it "has *never* reported the significant and unsafe levels of benzene in any of [its] cosmetic products . . . ." FAC ¶ 51. Second, Plaintiff cites Proposition 65 ("Prop 65"), which prohibits businesses from knowingly exposing consumers to chemicals known to the state to cause cancer or reproductive toxicity without adequate warnings. *See id.* ¶¶ 56–59 (citing CAL. HEALTH & SAFETY CODE § 25249.5, *et seq.*). As she does above with respect to the CSCA, Plaintiff alleges that P&G has violated Prop 65 by declining to provide the required warnings despite exposing the public to

benzene from the Products.  *Id.* ¶ 58.

To support her claim that P&G's Products contain some amount of benzene, Plaintiff relies on two data points.  First, Plaintiff alleges that "[s]everal of the [Products] were independently tested and shown to contain dangerous levels of benzene, a known human carcinogen." *Id.* ¶ 7.  Though Plaintiff does not crisply define this independent testing, she later references the so-called Valisure Tests, which revealed that the Products "contain some of the highest concentrations of benzene in the cosmetics industry." *Id.* ¶ 52.  Second, Plaintiff pinpoints a P&G "recall of certain dry conditioner and shampoo products 'from Herbal Essences due to the presence of benzene,'" including the relevant Products. *Id.* ¶ 41.  According to Plaintiff, this recall, which took place on December 17, 2021, provides evidence that "P&G was well aware that they were exposing individuals to benzene at levels requiring a warning under [Prop 65]." *Id.* ¶ 59.  Plaintiff alleges that these indicators, coupled together with "the longstanding recommendations of the scientific community extolling the dangerousness of benzene exposure," demonstrate that "Defendants were aware well in advance of placing the [Products] into the stream of commerce that they were prone to unreasonably high rates of benzene presence," but they "knowingly failed to take any action to correct the defects in the [Products], including failing to warn or otherwise educate the public," "in order to advance their pecuniary gains." *Id.* ¶¶ 61–66.

## PROCEDURAL HISTORY

Plaintiff brought this action on November 9, 2023, in the Superior Court of the State of California ("Compl.," ECF No. 1 Ex. A).  After service of the Complaint on April 18, 2024, Defendants timely removed the case to this Court on May 15, 2024. *See* ECF No. 1 at 4.  Plaintiff asserted six causes of action, all under California state law: (1) negligence, (2) failure to warn, (3) design defect, (4) manufacturing defect, (5) breach of implied warranty of merchantability, and (6) fraudulent concealment. *See* Compl.  Defendants filed the first Motion to Dismiss Plaintiff's Complaint on June 17, 2024, seeking dismissal of all claims. *See* ECF No. 14.

/ / /

On February 6, 2025, the Court granted Defendants' Motion to Dismiss Plaintiff's Complaint ("Order," ECF No. 20) and allowed Plaintiff leave to amend. While the Court found that Plaintiff had satisfied her pleading requirement regarding being exposed to enough benzene levels to cause her disease, Order at 10–12, the Court concluded that Plaintiff had failed to "allege which Herbal Essences products she actually purchased and used," *id.* at 21. The Court, relying on *Bowen v. Energizer Holdings, Inc.*, 188 F.4th 1134 (9th Cir. 2024), clarified that "Plaintiff need not allege the batch or lot numbers from which the products she purchased are from." Order at 21 n.4. But rather, "[i]t is enough for Plaintiff to identify the product(s) by name." *Id.* Regarding Plaintiff's fraudulent concealment claim, the Court found the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) unsatisfied. *Id.* at 23. The Court held that, "[a]lthough the Complaint alleges that 'P&G knowingly falsified their test results, ignored and suppressed data, abdicated their responsibility to test, and/or further falsely mischaracterized adverse test data,' it does not allege *who* falsified the test results, *when* and *where* the test results were falsified, or *how* they were falsified." *Id.* The Court further noted that, while Plaintiff asserted this claim against all Defendants, she alleged "no facts whatsoever to suggest that either Walmart or Target had any involvement in the alleged concealment." *Id.*

On February 27, 2025, Plaintiff filed her First Amended Complaint ("FAC") alleging the same six causes of action, except bringing the fraudulent concealment claim against only P&G. *See* FAC. On March 13, 2025, Defendants filed the current Motion requesting Judicial Notice of "the FDA website cited by Defendants" and attacking Plaintiff's FAC on multiple grounds. *See* Mot.

## REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice and/or incorporate by reference P&G's December 17, 2021, recall notice as published on the FDA website ("Recall Notice," ECF No. 23 Ex-A).

/ / /

/ / /

## I.    Legal Standard

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."  *Id.*  Both exceptions "permit district courts to consider materials outside a complaint . . . ."  *Id.*

"[T]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "Accordingly, '[a] court may take judicial notice of matters of public record . . . .'"  *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689).  This would include information "made publicly available by government entities . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).  However, "a court cannot take judicial notice of disputed facts contained in such public records."  *Khoja*, 899 F.3d at 999 (citing *Lee*, 250 F.3d at 689).

Under the incorporation-by-reference doctrine, a court may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).  A defendant may seek to incorporate a document into the complaint in two ways.  First, "if the plaintiff refers extensively to the document," it may be incorporated by reference.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Second, a document may be incorporated by reference if "the document forms the basis of the plaintiff's claim."  *Id.* at 908.  A document forms

the basis of the plaintiff's claim when "the claim necessarily depend[s]" on the document. *Khoja*, 899 F.3d at 1002 (quoting *Knievel*, 393 F.3d at 1076).

"The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. However, "[t]he incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Khoja*, 899 F.3d at 1014.

## II. Analysis

The Court previously granted Defendants' request for Judicial Notice of the Recall Notice, *see* Order at 7, and Plaintiff does not object to this request, Reply at 2 n.1. Therefore, the Court **GRANTS** Defendants' request for Judicial Notice of the existence of the Recall Notice.

Regarding Defendants' request to consider the Recall Notice incorporated by reference, the Court previously denied this request because "Defendants provide[d] no substance to this argument, nor [did] they cite any cases expounding upon the incorporation-by-reference doctrine," and because the Recall Notice was not referred to extensively in the Complaint nor did it form the basis of the claim. Order at 6–7. The Court now agrees with Defendants that the Recall Notice is referred to extensively in the FAC. The Recall Notice is relied upon by Plaintiff to demonstrate that the Products did contain benzene, and that Defendants were aware of this fact. FAC ¶¶ 7, 41–42, 58–59; Opp'n at 11. Therefore, the Court **GRANTS** Defendants' request to incorporate the Recall Notice by reference to demonstrate that the Herbal Essences White Grapefruit & Mint Dry Shampoo and Herbal Essences Cucumber & Green Tea Dry Shampoo Personal Injury Products are included in the Recall Notice.

/ / /

/ / /

/ / /

## MOTION TO DISMISS

## I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted."  To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555).  In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original).  If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent

with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## II.  Analysis

Defendants first argue that, while "Plaintiff may have met the first requirement in the Court's footnote and identified the products she used," Plaintiff has still failed to satisfy "the second requirement by making plausible allegations that these products contained benzene." Mot. at 18.  Defendants then argue that Plaintiff failed to state a claim against Walmart or Target for negligence or breach of an implied warranty.[1]  *Id.* at 21–22. Defendant also argues that Plaintiff's breach of implied warranty claim against P&G fails for lack of vertical privity, *id.* at 22–24, and that Plaintiff still has not satisfied the heightened pleading standard required for her fraudulent concealment claim, *id.* at 24–26. The Court considers each argument in turn.

### A.  Causation

First, the Court addresses Defendants' causation argument that Plaintiff has failed to plausibly allege that the Products she identified in her FAC contained benzene.  Mot. at 18. Defendants again make this argument globally, applying equally to all six of Plaintiff's claims as all six causes of action require a showing of causation to be viable.  *See U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 463 P.2d 770, 774 (Cal. 1970) (stating the principle that negligence requires the alleged breach to be the "the proximate or legal cause of the resulting injury"); *Greenman v. Yuba Power Prods., Inc.*, 377 P.2d 897, 900 (Cal.

---

[1] Plaintiff, in her Opposition, states that she has "plausibly alleged design, manufacturing, and failure to warn defect claims against Target and Walmart."  Opp'n at 14.  Plaintiff then states that she "does not intend to pursue any other claims against Target and Walmart at this time," meaning that Plaintiff only intends on bringing the strict liability causes of action against Target and Walmart. *Id.*  Defendants, in their Reply, state that they "are not separately arguing that Plaintiff also does not state a strict liability claim against either retailer." Reply at 5.  Defendants only contest causation as to the strict liability claims. *Id.*  Therefore, the only claims Plaintiff intends on bringing against Walmart and Target are the strict liability claims: failure to warn (second cause of action), design defect (third cause of action), and manufacturing defect (fourth cause of action).  Accordingly, Plaintiff's negligence (first cause of action) and implied warranty of merchantability (fifth cause of action) claims, in so far as they are alleged against Walmart and Target, are **DISMISSED**.

1963) (en banc) ("A manufacturer is strictly liable in tort when an article he places on the market . . . proves to have a defect that causes injury to a human being."); *Gutierrez v. Carmax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61, 74 (Ct. App. 2018) (noting that a cause of action for implied warranty of merchantability requires sufficient allegations of causation); *Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 228 (Ct. App. 2014) (requiring the plaintiff to "sustain[] damage as a result of the [fraudulent] concealment").

In the Court's previous Order, the Court relied on a footnote in *Bowen v. Energizer Holdings, Inc.*, 118 F. 4th 1134, at 1149 n.13 (9th Cir. 2024), for the premise that the Plaintiff need not allege the specific batch or lot numbers from which the Products were purchased from. Order at 21 n.4. Plaintiff need only "identify the product(s) by name," and "then . . . the Court [can] make the determination as to whether it is plausible she was exposed to benzene." *Id.* Plaintiff, in her FAC, has identified two products by name that she purchased routinely over the past decade: Herbal Essences White Grapefruit & Mint Dry Shampoo and Herbal Essences Cucumber & Green Tea Dry Shampoo. FAC ¶ 20. Defendants attempt to argue that Plaintiff has not sufficiently pled causation because she has not described the Products by the size, 4.9oz. and 1.7oz, or by type, i.e., the Herbal Essences' products that were specifically identified in the recall notice "by production code range and UPC number." Mot. at 18. Defendants misconstrue the language of the Court's previous Order— "[i]t is enough for Plaintiff to identify the product(s) by name." Order at 21 n.4. Therefore, Defendants' argument is off the mark in this respect.

The Court must now address whether Plaintiff has plausibly pled that she was exposed to benzene by the Products. Defendants argue that she has not because she has not added any allegations that "Valisure specifically tested either [Product] she used, much less what Valisure's test results showed." Mot. at 18. Defendant further posits that Plaintiff continues to allege that "several" Herbal Essence products were "independently tested and shown to contain dangerous levels of benzene," FAC ¶ 7, but fails to allege that this testing was conducted on the Products she bought and used, Mot. at 18. Plaintiff argues that she need not prove, at the motion to dismiss stage, that the Products she "bought, used, and

discarded contained benzene." Opp'n at 12 (quoting *Bowen*, 118 F. 4th at 1149 n.13). The Court agrees with Plaintiff.

In her FAC, Plaintiff alleges that the Products were "independently tested and shown to contain dangerous levels of benzene," FAC ¶ 7, the "Valisure Tests" demonstrated that the Products "contain some of the highest concentrations of benzene in the cosmetics industry," *id.* ¶ 52, and that, on December 17, 2021, P&G issued a recall of "certain dry conditioner and shampoo products" including the relevant Products, *id.* ¶ 41. While these allegations are not ideal, they are sufficient to plausibly allege that the Products contained benzene. Like *Bowen*, where the court noted that the plaintiff "did not provide evidence to support the allegation that the [product] she bought, used, and discarded contained benzene," 118 F. 4th at 1149 n.13, Plaintiff has also not provided evidence, at this stage, that the specific Products she used contained benzene. However, the Court agrees that this is not necessary to withstand Defendants' Motion. *See Bowen*, 118 F. 4th at 1149 n.13.

The Court finds the analysis in *Scheibe v. ProSupps USA, LLC*, 141 F. 4th 1094, 1100–01 (9th Cir. 2025) persuasive. There, the Ninth Circuit analyzed whether the plaintiff's failure to plead nutrition testing according to the FDA's sampling process precluded plaintiff from pleading that a food's label violated California consumer protection laws due to preemption. *Id.* at 1096–97. "To promote 'national uniform nutrition labeling,' the Food, Drug, and Cosmetic Act preempts state laws that 'directly or indirectly establish . . . any requirement for nutrition labeling of food that is not identical' to the Act's nutrition labeling requirements." *Id.* at 1098 (quoting 21 U.S.C. § 343-1(a)(4)) (simplified). So, if a product's label complies with the Act, which can only be determined by the FDA's testing and sampling methods, "then the Act preempts any state-law claim that the product is mislabeled." *Id.* (citation omitted). The plaintiff, to survive preemption, had to "allege that the supplement was mislabeled 'within the meaning of the federal regulations.'" *Id.* at 1099 (quoting *Nacarino v. Kashi Co.*, 77 F. 4th 1201, 1212 (9th Cir. 2023)).

The plaintiff, while satisfactorily alleging he complied with FDA's testing methods, only alleged that "one sample of the supplement, tested by an independent laboratory, contained more carbohydrates and calories than [defendant] listed on the supplement's label." *Id.* The court found that this was sufficient to allege that the plaintiff had complied with FDA's sampling methods because, while it was possible that "[the plaintiff's] first and only test result is an outlier" and that "[p]erhaps additional tests in discovery will confirm that the supplement [did comply with the Act]," *id.* at 1100, "the Federal Rules of Civil Procedure do not cast judges as skeptics of pleadings," and rather "a court must 'assume that all the allegations in the complaint are true (even if doubtful in fact),'" *id.* (quoting *Twombly*, 550 U.S. at 555) (simplified). The court "decline[d] to adopt a rule that would, in effect, require plaintiffs to perform the FDA's sampling process at the pleading stage to avoid preemption," as "it may be impracticable for a plaintiff to [complete the testing] before discovery opens." *Id.* (citing 21 C.F.R. § 101.36(f)(1)). The court emphasized that "plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage." *Id.* (quoting *Durnford v. MusclePharm Corp.*, 907 F. 3d 595, 603 n.8 (9th Cir. 2018)). Therefore, the court concluded that the plaintiff had satisfied the plausible pleading standard for a motion to dismiss. *Id.* at 1101.

The Court is persuaded that this analysis can be applied here. In discovery it may turn out that the Products Plaintiff used did not contain benzene; however, a definitive showing that they contained benzene is not required to survive Defendant's Motion. The only requirement is that the Court be persuaded it is plausible, based on Plaintiff's allegations, the Products contained benzene. Plaintiff alleges that multiple tests found the Products contained benzene, FAC ¶¶ 7, 52, and that the Products of the kind she routinely purchased were recalled for containing benzene, *id.* ¶ 41. "[T]he Federal Rules of Civil Procedure do not cast judges as skeptics of pleadings." *Scheibe*, 141 F. 4th at 1100. While it is true that Plaintiff has not proved that the specific Products she used contained benzene, at this stage, the Court is satisfied that Plaintiff has plausibly alleged she was exposed to benzene by the Products. It is impractical to require Plaintiff to conduct extensive testing

to "provide evidence in support of [her] claims at the pleading stage." *Durnford*, 907 F. 3d at 603 n.8. Later, this argument may result in dismissal of Plaintiff's claims, but not in the present Motion.

Moreover, the case cited by Defendants, *Bodle v. Johnson & Johnson*, is distinguishable. No. 21-CV-7742-EMC, 2022 WL 18495043 (N.D. Cal. Feb. 24, 2022). There, a key hurdle to the court concluding that plaintiff plausibly alleged a causal chain was that plaintiff failed to "provide any information as to the timing of her diagnosis and her alleged use of [d]efendant's contaminated product to establish a plausible causal chain." *Id.* at 2. The court was not able to ascertain from the pleadings whether plaintiff's cancer diagnosis predated or postdated her exposure to the defendant's products. *Id.* Here, Plaintiff alleges that she used "P&G's personal care products for decades," FAC ¶ 6, and she was diagnosed with Chronic Lymphocytic Leukemia on November 12, 2021, *id.* ¶ 20. Therefore, the Court can plausibly follow the causal chain between the consistent use of the Products before Plaintiff's diagnosis. In so far as Defendants rely on their cases cited in their initial motion to dismiss, the Court has already found these arguments without merit. Order at 20. Further, Defendants' insistence that *Bowen* is inapplicable because it discusses a different cause of action and imposes a lower pleading standard than Rule 12(b)(6)'s plausibility standard has already been rejected by the Court. *Id.* at 19 n.3 ("The Court notes that there is an important distinction between a false advertising case like *Bowen* and a defective product case as the Court is faced with here. That said, the distinction does not impact the Court's analysis."); *Bowen*, 118 F. 4th at 1049 n.13 ("Because [d]efendants did not produce evidence showing that the Ultra Sport 30 did not contain benzene, we review the issue of whether the Ultra Sport 30 contained benzene under the rubric for a facial challenge to jurisdiction, i.e., the Rule 12(b)(6) standard."). Therefore, Defendants' Motion fails on causation grounds.

/ / /

/ / /

/ / /

### B.    Vertical Privity

Defendants also argue that Plaintiff's implied warranty claim against P&G fails for lack of vertical privity.[2]  Mot. at 23.  Plaintiff argues that Defendants waived this argument because Defendants could have, but did not, raise this argument in their initial 12(b)(6) motion to dismiss the original complaint.  Opp'n at 14–17.  Plaintiff alleges that "a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)."  *Id.* at 14 (quoting *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir. 2017)).

The Court disagrees with Plaintiff's application of *In re Apple iPhone Antitrust Litig.* "If a failure-to-state-a-claim defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial."  *Id.* at 318 (citation omitted).  However, as Defendants correctly point out, the Ninth Circuit, following the language in *In re Apple iPhone Litig.*, is extremely "forgiving" of district courts exercising their discretion to consider subsequent motions raising new arguments on the merits.  *See Cuviello v. City of Vallejo*, No. 16-cv-2584-KJM-KLN, 2020 WL 6728796, at *4–5 (E.D. Cal. Nov. 16, 2020) (allowing a new argument in a second 12(b)(6) motion following the Circuit's "forgiving" stance); *SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*, No. 23-cv-6543-BLF, 2025 WL 661599, at *8 (N.D. Cal. Feb. 27, 2025) (considering a newly raised argument because the court had no reason to believe that the defendant sought to delay the litigation).  Many district courts in this Circuit have concluded that new arguments in a subsequent Rule 12(b)(6) motion should routinely be considered on the merits.  *See, e.g., Dawson v. One Call Medical, Inc.*, No. 20-cv-1188-LAB-KSC, 2022 WL 22899885, at *2 (S.D. Cal. July 22, 2022) (collecting cases) (finding that defendants "need not consolidate all failure-to-state-a-claim arguments in a single dismissal motion");

---

[2] As discussed above, Plaintiff no longer intends to bring a breach of implied warranty claim against Walmart and Target.  *See* Opp'n at 14; Reply at 5–6.

*Manlin v. Ocwen Loan Servicing, LLC*, No. CV 16-6625-AB (KSx), 2017 WL 8180779, at *3 (C.D. Cal. Dec. 7, 2021) (collecting cases) ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion."); *Moreno v. Castlerock Farming and Transport Inc.*, No. 12-CV-556 AWI JLT, 2022 WL 902597, at *3–4 (E.D. Cal. Mar. 28, 2022) (following other district courts in California and considering the merits of newly raised arguments in a successive motion to dismiss). Therefore, the Court will consider Defendants' vertical privity argument on the merits.

"Vertical privity is an essential element for an implied warranty claim under California law." *Valentine v. Crocs, Inc.*, 783 F. Supp. 3d 1204, 1213 (N.D. Cal. 2025) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023–24 (9th Cir. 2008)). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens*, 534 F. Supp. at 1023 (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)). An end consumer who buys from a retailer is not in privity with a manufacturer. *Id.* Here, Defendants correctly argue that Plaintiff is not in vertical privity with P&G because Plaintiff is the consumer and P&G is the manufacturer. Mot. at 22–23. Therefore, without an exception, her implied warranty cause of action fails for lack of vertical privity.

There are exceptions to the privity requirement such as: (1) in the case of an express warranty, the plaintiff relies on written labels or advertisements of a manufacturer, *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954); (2) foodstuffs, drugs, and pesticides, *id.*, (3) certain employees who are injured while using dangerous products purchased by their employers, *Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339, 347–48 (1960); and debatably, (4) third party beneficiaries, *Zeiger v. WellPet LLC*, 304 F. Supp. 837, 853–55 (N.D. Cal. 2018). Here, Plaintiff does not address Defendants' vertical privity argument on the merits and does not allege that she fits within any exception. For the sake of judicial efficiency, the Court will consider whether Plaintiff's claim fits into any of the exceptions. The Court concludes it does not.

First, regarding the advertising exception, Plaintiff brings an implied warranty claim, so Plaintiff cannot use this exception as it only applies in express warranty claims.  *See Burr*, 42 Cal. 2d at 696 (discussing an exception where "the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity").

Second, Plaintiff cannot fit her implied warranty argument for dry shampoo into the exception for foodstuffs, drugs, and pesticides.  *See Klein v. Duchess Sandwich Co., Ltd.*, 14 Cal. 2d 272, 283–84 (1939) (creating the exception).  This exception is intended to apply to drugs and foodstuffs "designed . . . for introduction into the body of a human being." *Gottsdanker v. Cutter Laboratories*, 182 Cal. App. 2d 602, 607 (1960).  In special cases, this exception excuses the privity requirement "when the product is unfit for human consumption or physically injures a consumer."  *Seale v. GSK Consumer Health Inc.*, 718 F. Supp. 3d 1208, 1230 (C.D. Cal. 2024).  The foodstuffs exception "has been extended to drugs, on the basis that a drug is intended for human consumption quite as much as is food."  *Choi v. Kimberly-Clark Worldwide, Inc.*, No. SA CV 19-468-DOC (ADSx), 2019 WL 4894120, at *10 (C.D. Cal. Aug. 28, 2019) (collecting cases).

After a review of California and Ninth Circuit caselaw, the Court has not found a case applying this exception to, as the Plaintiff describes in her FAC and Opposition, a "cosmetic" product such as the Products at issue here.[3]  *See* Opp'n at 18 ("Plaintiff has alleged that the subject products are wholly unfit for their ordinary purpose as *cosmetic products* because they are unsafe." (emphasis added)) ("Again, a *cosmetic product* that causes CLL is not fit for its ordinary use." (emphasis added)); FAC ¶¶ 44–46; *cf. Choi*, 2019 WL 4894120, at *10 (finding tampons fit the exception because they are intended to

---

[3] While the Court notes one district court has found sunscreen "sufficiently similar to drugs, foodstuffs, and pesticides" to qualify for the exception, considering the direction of the Ninth Circuit in *Clemens*, the Court declines to extend this exception to cover a cosmetic product like dry shampoo.  *See Hazard v. Johnson & Johnson Consumer, Inc.*, No. 23-7629 PA (MRWx), 2023 U.S. Dist. LEXIS 221326, at *6 (C.D. Cal. Dec. 12, 2023) (concluding with no analysis that sunscreen fits the exception).

be "consumed" by humans); *Moran v. Edgewell Personal Care, LLC*, No. 21-CV-7669-RS, 2022 WL 3046906, at *2 (N.D. Cal. Aug. 2, 2022) (granting a motion to dismiss based on lack of privity where the relevant product was sunscreen).  "The Ninth Circuit [in *Clemens*], in describing the exceptions arising in 'special cases' involving foodstuffs, pesticides, and pharmaceuticals, has held that federal courts sitting in diversity are 'not free to create new exceptions [to the privity requirement].'"  *Choi*, 2019 WL 4894120, at *11 (quoting *Clemens*, 534 F.3d at 1024); *see also Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1084 (N.D. Cal. 2011) (finding cigarettes did not fit the foodstuffs exception because it is up to the California courts to extend the exception not a federal court).  Therefore, because the Products at issue are cosmetic and not a foodstuff, drug, or pesticide, and the Court declines to create a new exception, Plaintiff's claim cannot survive under this exception.

Third, regarding the employee exception, Plaintiff is not an employee of any of the Defendants and did not use a dangerous product, so this exception does not apply. *Peterson*, 54 Cal. 2d at 347–48; *see also Clemens*, 534 F.3d 1017, 1023 (discussing exception in the special case "where the end user is an employee of the purchaser").

Fourth, the third-party beneficiary exception under California law has not been explicitly recognized in the Ninth Circuit.  *See Valentine*, 783 F. Supp. 3d at 1213–14 (citing *Clemens*, 534 F.3d at 1023) ("The Ninth Circuit has not explicitly recognized the existence of an exception to the privity requirement for third-party beneficiaries.").  "There is an ongoing split in authority . . . regarding whether a third-party beneficiary exception to the vertical privity requirement remains available post-*Clemens*."  *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1011 (N.D. Cal. 2023) (collecting cases).

The first half of the split—finding the exception does not exist—asserts that *Clemens* contained a detailed discussion of the exceptions to the privity requirements under California law but omitted any mention of the beneficiary exception.  *See Clemens*, 534 F.3d at 1023–24.  *Clemens* also emphasized that "California courts have painstakingly established the scope of the privity requirement" and "a federal court sitting in diversity is

not free to create new exceptions to it." *Id.* at 1024 (internal citations omitted). These courts have found that the few California cases recognizing the third-party beneficiary exception—*Gilbert* and *Burch*—have only found it in the real estate construction contract context allowing a homeowner to sue a subcontractor and have concluded that "no third-party beneficiary exception has ever been applied in a citable decision." *Quackenbush v. Am. Honda Motor Co.*, 650 F. Supp. 3d 837, 843 (N.D. Cal. 2023) (considering *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978) and *Burch v. Superior Ct.*, 223 Cal. App. 4th 1411 (2014)); *see also Xavier*, 787 F. Supp. 2d at 1083 (finding no vertical privity in a products liability action for cigarettes because "[n]o reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that [they are] a third party-beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale"). The court in *Quackenbush* also emphasized that if this privity requirement were broadened, "[a]ll end-user purchasers of consumer products could claim exempted status" thus making the privity requirement obsolete. *Quakenbush*, 650 F. Supp 3d at 844 (citing *In re Seagate Tech. LLC. Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017)). These courts conclude that "*Gilbert* is specific to its facts" and any courts finding otherwise "require a plaintiff to show that [she] was a third-party beneficiary of a contract between the defendant and a third party." *Shay v. Apple Inc.*, No. 20cv1629-GPC(BLM), 2021 WL 1733385, at *7 (S.D. Cal. May 3, 2021) (collecting cases); *see also Reed v. Dynamic Pet Products*, No. 15cv987-WQH-DHB, 2015 WL 4742202, at *11 (S.D. Cal. July 30, 2015) (finding the exception inapplicable for the purchase of Real Ham Bone For Dogs from Walmart because plaintiff failed to allege that they were the "intended beneficiary of any contracts between Wal-Mart and Defendants").

　　The other half of the split concludes that "[i]n light of *Gilbert* and the lack of a clear holding to the contrary in *Clemens* . . . the third-party beneficiary exception remains viable under California law." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014); *see also Zeiger*, 304 F. Supp. 3d at 854 ("Given that *Clemens* did not directly address the third-party beneficiary exception, nor did it address *Gilbert*, it need not

be read to foreclose the third-party beneficiary exception to privity under California law.").
Many of the cases finding the exception applicable have been in the context of a vehicle
dealership selling a car to a consumer. *See, e.g.*, *Goldstein v. GM LLC*, No. 19cv1778-LL-
AHG, 2022 WL 484995, at *10 (S.D. Cal. Feb. 16, 2022) (finding that the purchasers of
the vehicles from authorized dealerships were intended third-party beneficiaries); *Wadeea
v. Mercedes-Benz USA, LLC*, 758 F. Supp. 3d 1217, 1227 (S.D. Cal. 2024) (finding an
issue of fact whether plaintiff was an intended beneficiary of the implied warranty between
the car manufacturer and the authorized dealer).

The Court finds that the third-party exception does not apply. *See Corbett v.
Pharmacare U.S., Inc.*, 544 F. Supp. 996, 1011 (S.D. Cal. 2021) (finding the third-party
beneficiary exception inapplicable for a vitamin supplement because plaintiff did not
demonstrate that they were a third-party beneficiary). First, the Court is doubtful that the
beneficiary exception is applicable in products liability suits of this nature. *Gilbert* arose
in a very specific factual scenario involving a construction contract between a contractor
and a sub-contractor where the court did not decide the privity issue because the plaintiff
was a third-party beneficiary of the contract. 82 Cal. App. 3d at 69 ("Under the facts of
this case we do not need to decide the issue of privity, per se."). Here, the Plaintiff is
simply a consumer purchasing the Products from Walmart and Target. If the Court were
to allow every purchaser of a product from a retailer such as Walmart and Target to meet
the exception to vertical privity as a third-party beneficiary, then the privity requirement
would be moot. *See Quackenbush*, 650 F. Supp. 3d at 844. Further, absent explicit
evidence of the existence of this exception in a California decision, the Court is reluctant
to expand the exception to this extent. *See Clemens*, 534 F.3d at 1024 ("[A] federal court
sitting in diversity is not free to create new exceptions . . . ."); *Klaehn v. Cali Bamboo,
LLC*, No. 19-CV-1498 TWR (KSC), 2021 WL 3044166, at *15 (S.D. Cal. June 14, 2021)
("This [c]ourt is persuaded by the reasoning of [the cases] that follow *Clemens*' guidance
to not create an exception to California's privity requirement in advance of any California

state court."); *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 1046, 1088 (S.D. Cal. 2019) (same).

Therefore, Defendants' Motion is **GRANTED** as to Plaintiff's implied warranty claim to P&G without leave to amend.

### C.   *Fraudulent Concealment*

The Court next considers Defendants' argument that Plaintiff has still failed to meet Rule 9(b)'s heightened pleading standard for her fraudulent concealment claim.  Mot. at 24.  Defendant argues that Plaintiff failed to satisfy the Court's previous Order that she must "allege *who* falsified the test results, *when* and *where* the test results were falsified, or *how* they were falsified," *id.* (quoting Order at 23), by "adding vague allegations that this conduct was perpetrated by 'P&G's senior executive, legal, compliance, government relations, public policy, and brand protection teams, who routinely received test data at regular intervals confirming the presence of benzene in their products and, each time, intentionally chose not to disclose the same to consumers despite their duty to do so,'" *id.* (quoting FAC ¶ 4).

Plaintiff argues that she has satisfied the heightened pleading requirements.  Opp'n at 19–21.  She states that the *who* is "P&G's senior executive, legal, compliance, governmental relations, public policy, and brand protection teams."  *Id.* at 19.  The *when* is allegedly "an ongoing omission spanning from 2005 onward."  *Id.* at 20.  The *where* is the "CDPH's reporting system where P&G was legally required to disclose the presence of benzene" as P&G "had an ongoing duty to disclose the presence of benzene to the public pursuant to Proposition 65 and the California Safe Cosmetics Act of 2005," yet they "never" did.  *Id.*  The *how* is "P&G's deliberate omission from mandatory regulatory disclosures to CDPH through its failure to report what its internal testing had confirmed with respect to its products."  *Id.* at 21.  Defendants counter that P&G cannot be liable for fraudulent concealment when "she herself pleads that P&G publicly and voluntarily recalled some of its products based on internal testing conducted by P&G."  Reply at 11.

/ / /

In California, plaintiffs alleging fraudulent concealment must plead five elements:

> (1) [T]he defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 100 Cal. Rptr. 3d 637, 652 (Ct. App. 2009) (quoting *Roddenberry v. Roddenberry*, 51 Cal. Rptr. 2d 907, 926 (Ct. App. 1996)).

Because this is a fraud claim, Federal Rule of Civil Procedure 9(b) sets the bar for Plaintiff's pleadings. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

The Court is not convinced that Plaintiff has satisfied the pleading standard required for fraudulent concealment claims. Plaintiff alleges that the Products "have not been proven safe" and "contain significant, unsafe levels of benzene, a known carcinogen." FAC ¶ 103. Plaintiff states, in a conclusory manner, that P&G "knew that the products contained benzene, but intentionally failed to disclose that material fact to consumers." *Id.* ¶ 105. Defendants argue that Plaintiff has not alleged they had a duty to disclose because she failed to allege that P&G knew that the products contained benzene, and thus failed to allege *how* they could have falsified any test results. Mot. at 25. The Court agrees. Plaintiff simply alleges that P&G has known the products contained benzene since 2005

because they "routinely received test data at regular intervals confirming the presence of benzene in their products," FAC ¶ 58, "lobbied against the CSCA," *id.* ¶ 53, and were aware that their "competitors have reported the presence of benzene in their [own] products," *id.* ¶ 50.   However, Plaintiff does not allege any test results or other evidence before the 2021 recall of the Products demonstrating that P&G's Products contained benzene.   *Id.* ¶ 41.   Because of this, Plaintiff has failed to allege that P&G had any knowledge that its Products contained benzene during the alleged period, 2005 until the 2021 Recall Notice.   *See Daugherty v. Padagis US LLC*, 794 F. Supp. 3d 674, 695 (N.D. Cal. 2025) (dismissing fraudulent concealment claim based on a failure to disclose a presence of benzene because the plaintiff failed to allege facts demonstrating how defendants violated the regulatory standards or deceived consumers); *cf. Acedo v. DMAX, Ltd.*, No. CV 15-02443 MMM (ASx), 2015 WL 12696176, at *14 (C.D. Cal. Nov. 13, 2025) (finding Rule 9(b) satisfied when plaintiff alleged that *how* defendant concealed the information was "by denying, following the receipt of customer complaints, that there was a known defect and by assuring consumers that their vehicles had no defect"); *see also Ehrich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (denying a motion to dismiss on a fraudulent concealment claim where plaintiff pled with particularity how the design was defected, how defendant discovered the defect, and the steps defendant took to conceal the defect); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (denying motion to dismiss on a fraudulent concealment claim where plaintiff alleged that defendant ignored consumer complaints and intentionally gave the impression that the defective products were unique cases).

Additionally, Plaintiff's allegation that "P&G sold the Personal Injury Products despite its actual or constructive knowledge of a material design and/or manufacturing defect" and that "P&G knew or should have known that Plaintiff would suffer injuries caused by the inclusion of benzene in the Personal Injury Products" are insufficient to satisfy Rule 9.   FAC ¶ 10; *see Daugherty*, 794 F. Supp. 3d at 695 ("Plaintiffs' allegation

that 'had Defendants adequately tested their BPO Products for benzene, they would have discovered that the Products contained benzene' is too conclusory.").

Further, Plaintiff's allegation that "P&G's senior executive, legal, compliance, governmental relations, public policy, and brand protection teams" were aware of the level of benzene and failed to disclose it is also too conclusory to survive Defendants' Motion. FAC ¶ 105; *see Snyder v. Does 1 Through 50*, No. 30-cv-8419-KAW, 2021 WL 4170766, at *6 (N.D. Cal. Sept. 14, 2021) (dismissing a fraudulent concealment claim when plaintiff did not identify any of the defendants by name, but merely alleged that "all of the defendants were in a fiduciary relationship with [p]laintiff" and "intentionally failed to disclose the danger of benzene exposure").  Defendants are correct that "[w]ithout identifying the time, place, and specific content of the alleged fraud as well as the identities of the parties to the misrepresentation, P&G is not on notice about who allegedly concealed any material facts, when or where that concealment occurred, or how that concealment occurred."  Mot. at 25 (first citing *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015), then citing *Kennedy v. Lehman Bros. Bank*, No. 10-CV-1516 JLS (AJB), 2010 WL 4537831, at *4 (S.D. Cal. Nov. 2, 2010)).

Therefore, Plaintiff's fraudulent concealment claim is **DISMISSED WITH LEAVE TO AMEND** to plead fraud with particularity, including the specific misconduct by named individuals within P&G.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 23).  Plaintiff's negligence (first cause of action) and implied warranty of merchantability claims (fifth cause of action), in so far as they are alleged against Wal-Mart Stores, Inc. and Target Corporation, are **DISMISSED WITHOUT PREJUDICE.**[4]  Plaintiff's implied warranty of merchantability (fifth cause

---

[4] Plaintiff indicated that she no longer intends to bring these causes of action against Walmart and Target. Opp'n at 14.

of action), in so far as it is alleged against P&G, is **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiff's fraudulent concealment claim (sixth cause of action) against P&G is **DISMISSED WITH LEAVE TO AMEND**.

<u>Within twenty-one (21) days</u> of this Order, Plaintiff either **(1) SHALL FILE** a second amended complaint, or **(2) SHALL INDICATE** to the Court that she will not do so. Any amended complaint must be complete in and of itself without reference to Plaintiff's original Complaint or First Amended Complaint; claims not realleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived").

**IT IS SO ORDERED.**

Dated: January 5, 2026

Hon. Janis L. Sammartino
United States District Judge

24-CV-856 JLS (SBC)